UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUIS PORTER,<br><br>        Plaintiff,<br><br>     v.<br><br>GENERAL MOTORS, LLC,<br><br>        Defendant. | Case No. 25-cv-07971-RFL<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 15 |

Marquis Porter initiated this lemon-law suit against General Motors (GM) in California state court. He asserts claims arising out of his purchase of a 2019 GMC Sierra 1500 under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq*.[1] Approximately three months after being served, GM removed the case to this Court. Porter now moves to remand, arguing that removal was untimely and GM has not sufficiently established federal jurisdiction. Porter's motion is **DENIED** for the reasons set forth below.

*Timeliness.* A defendant has three time periods to remove a case from state court. *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). The first runs for 30 days from receipt of an initial pleading making removability clear. *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1090 (9th Cir. 2021) (citing 28 U.S.C. § 1446(b)(1)). If removability was not clear from the initial pleading, the second runs for 30 days from receipt of an "amended pleading, motion, order or other paper" making removability clear. *Id.* at 1090–91 (quoting § 1446(b)(3)). Finally, if neither of the two preceding periods have elapsed, the third allows removal "on the basis of [a defendant's] own information." *Roth*, 720 F.3d at 1125. For most diversity cases,

---

[1] Porter's motion and reply make numerous references to a federal-law claim under the Magnuson-Moss Warranty Act (MMWA) and the MMWA's $50,000 amount-in-controversy requirement. But Porter's complaint has no such MMWA claim. (*See* Dkt. No. 1-1.)

1

this period elapses one year after the action's commencement. *Id.* at 1126 (citing § 1446(c)(1)).

District courts in the Ninth Circuit are split regarding what allegations in lemon-law cases are sufficient to trigger the first removal period. The courts are more evenly split as to the appropriate approach where a plaintiff pleads a vehicle's value but not costs necessary to calculate damages. *See Covarrubias v. Ford Motor Co.*, No. 25-CV-00328-JLS, 2025 WL 907544, at *3 (C.D. Cal. Mar. 24, 2025) (collecting cases). However, where, as here, a plaintiff does not plead any facts about value, the split is more lopsided. A substantial majority of courts have found that without pleading facts about the vehicle's value, a complaint is indeterminate concerning the amount in controversy and therefore that removability is not yet clear. *See, e.g.*, *Alvarez-Munguia v. Ford Motor Co.*, No. 23-CV-02751-BLF, 2024 WL 69076, at *3 (N.D. Cal. Jan. 5, 2024) (collecting cases); *Tirado-Lizarraga v. Ford Motor Co.*, No. 23-CV-01411-RS, 2023 WL 3868377, at *2–3 (N.D. Cal. June 6, 2023); *Lopez v. Gen. Motors, LLC*, No. 25-CV-06549-MWF, 2025 WL 2629545, at *2–3 (C.D. Cal. Sept. 11, 2025); *Leal v. Gen. Motors LLC*, No. 2:25-CV-08545-BFM, 2025 WL 3124332, at *3 (C.D. Cal. Nov. 7, 2025) (collecting cases). By contrast, a few courts have found that a defendant could reasonably ascertain potential recovery above the amount-in-controversy requirement just by knowing the plaintiff purchased an expensive new car. *See, e.g.*, *Lee v. Gen. Motors, LLC*, No. 2:25-CV-07090-MWC, 2025 WL 2855115, at *2 (C.D. Cal. Oct. 8, 2025); *Silvano v. Ford Motor Co.*, No. 23-CV-2422-DMG, 2023 WL 4295090, at *2–3 (C.D. Cal. June 30, 2023).

The majority approach is persuasive, as it logically follows from the Ninth Circuit's bright-line rule that only "the four corners of the applicable pleadings" trigger the first removal period. *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). Under that rule, a defendant's "subjective knowledge" is irrelevant, and defendants have no "duty to make further inquiry." *Id.* While a defendant must use a "reasonable amount of intelligence in ascertaining removability" (such as by multiplying figures in a complaint), it need not "consult[] its business records to identify a representative valuation." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140–41 (9th Cir. 2013). And though a defendant may be able to make a

"plausible-enough guess" of the amount in controversy "for a case involving . . . luxury automobiles," it need not remove until it receives a paper giving notice of the amount in controversy. *Id.* at 1141. The Ninth Circuit adopted this bright-line rule to bring "certainty and predictability to the [removal] process," avoid "gamesmanship in pleading," and prevent "the spectre of inevitable collateral litigation" over removal. *Harris*, 425 F.3d at 697. This rule avoids inevitable disputes over which cars are sufficiently expensive to make it obvious that the amount in controversy was high enough, and thus avoids wasting the resources of litigants and the courts on pointless side litigation over borderline jurisdictional questions.

Following the majority rule, the first removal period was never triggered by Porter's complaint. Porter's complaint only alleged the make, model, year, VIN, and purchase date of his vehicle. (Dkt. No. 1-1 ¶¶ 6, 9.) That information was not enough to give GM notice that the amount in controversy exceeded $75,000. *See Kuxhausen*, 707 F.3d at 1140–41. While Porter argues that GM's "sophisticated knowledge of the motor vehicle industry" meant it should have been able to ascertain the vehicle's market value, a defendant's subjective knowledge does not trigger the removal period. (*See id.*; Dkt. No. 15 at 12.)[2] Similarly, Porter's invocation of the state court's unlimited jurisdiction (for matters seeking total damages above $35,000) did not give GM notice that damages could exceed $75,000. *See Lopez*, 2025 WL 2629545, at *2 (collecting cases).

Nor did the second removal period elapse. The only apparent "paper[s]" that could trigger the second removal period are the sales agreement and loan payoff letter disclosed by Porter to GM in discovery on September 2, 2025. (*See Dietrich*, 14 F.4th at 1095; Dkt. No. 16-1 ¶¶ 2, 4.) GM removed Porter's complaint on September 18, 2025. (*See* Dkt. No. 1.) That was within 30 days of receiving those papers. *See* 28 U.S.C. § 1446(b)(3).

Since neither of the first two removal periods expired prior to removal, nor had one year elapsed since this case commenced, GM was entitled to remove Porter's complaint based on its

---

[2] All citations to page numbers refer to ECF pagination.

3

own information. *See Roth*, 720 F.3d at 1125–26.  GM's removal was therefore timely.  It is consequently unnecessary to consider whether Porter's complaint was also ambiguous as to citizenship or whether the strict construction standard of *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), applies to procedural removal requirements.

   ***Proof of Federal Jurisdiction.***  A defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  But if the plaintiff challenges removal, "[t]he defendant bears the burden of establishing that removal is proper."  *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009).  Since Porter's claims arise under state law, the only colorable basis for federal jurisdiction is diversity jurisdiction.  GM must therefore demonstrate there is complete diversity of citizenship and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  As to the amount-in-controversy requirement, GM must demonstrate "'by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold."  *See Dart Cherokee*, 574 U.S. at 88 (quoting 28 U.S.C. § 1446(c)(2)(B)).

   First, GM has demonstrated complete diversity of citizenship.  Where, as here, a plaintiff does not challenge allegations of citizenship, a defendant need not submit additional evidence.  *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227–28 (9th Cir. 2019).  GM alleges Porter is a citizen of California based on his residency in the state.  (Dkt. No. 1 at 3.)  Residence is not synonymous with citizenship.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Nevertheless, courts generally "treat a person's residence as prima facie evidence of the person's domicile."  *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013).  And since Porter does not dispute his citizenship, GM's allegation is sufficient to demonstrate he is a citizen of California.  *See Ehrman*, 932 F.3d at 1228.  GM alleges it is an LLC with another LLC as its sole member, and that LLC's sole member is a Delaware corporation with its principal place of business in Michigan.  (Dkt. No. 1 at 3.)  Since Porter does not dispute these allegations either, they are sufficient to establish GM as a citizen of both Michigan and Delaware.  *See*

4

*Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *Ehrman*, 932 F.3d at 1228.  Accordingly, Porter and GM are not citizens of the same state.

GM has also demonstrated an amount in controversy exceeding $75,000.  Under the Song-Beverly Act, a plaintiff seeking restitution for a motor vehicle is entitled to the actual purchase price after deducting a mileage offset, payments for optional services and equipment, negative equity, noncash credits, and unpaid financing.  Cal. Civ. Code § 1793.2(d)(2)(C); Cal. Civ. Proc. Code § 871.27(b)–(d), (f).  If the plaintiff establishes a "willful" violation, they can also recover up to double their actual damages as a civil penalty.  Cal. Civ. Code § 1794(c).  Finally, a prevailing plaintiff can recover reasonable attorney's fees.  Cal. Civ. Code § 1794(d).

GM has met its burden of proof to adequately estimate Porter's actual damages.  Porter purchased his GMC Sierra 1500 for $73,753.86.  (Dkt. No. 16-2 at 2.)  Some courts have concluded that the purchase price must be decreased by relevant offsets to estimate actual damages.  *Selinger v. Ford Motor Co.*, No. 2:22-CV-08883-SPG, 2023 WL 2813510, at *7 (C.D. Cal. Apr. 5, 2023) (describing varying approaches to the mileage offset).  Assuming without deciding that reasoning is correct, Porter could recover $62,529.65 in actual damages.  GM's proffered evidence leads to offsets of $2,789.24 for pre-defect mileage, assuming Porter's first repair visit was to fix this defect;[3] $4,990 for optional third-party contracts; and $3,444.97 for unpaid financing, assuming Porter will make 12 additional monthly payments after June 15, 2025.  (Dkt. No. 16 at 22; Dkt. No. 16-1 ¶¶ 2–4.)  Porter does not meaningfully contest GM's calculations besides arguing that they are speculative and lack an evidentiary foundation.  But that argument ignores GM's evidence—the sale contract, repair history, and loan payoff information for Porter's vehicle.  (Dkt. No. 16-2; Dkt. No. 16-3; Dkt. No. 16-4.)  And GM need not conclusively prove damages at this stage, since the amount in controversy is an "estimate of the total amount in dispute" that can rely on "a chain of reasoning that includes assumptions."

---

[3] GM's calculation appears to be slightly off, as 5,703 divided by 120,000 and multiplied by $58,690 is not $2,784.59 but is instead $2,789.24.  (*See* Dkt. No. 16 at 22.)  However, a mathematical error of approximately five dollars does not make a meaningful difference here.

5

*See Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (citations omitted).  Because GM's estimate of actual damages is supported by sufficient evidence, GM has shown that Porter could recover approximately $62,529.65.

Since Porter alleges that GM willfully violated the Song-Beverly Act, Porter could recover an additional $125,059.30 in civil penalties.  (*See* Dkt. No. 1-1 ¶¶ 17, 24, 28; Cal. Civ. Code § 1794(c).)  Porter contends that GM must present evidence to show that this penalty is likely.  While some courts require such evidence, this Court has previously concluded that a defendant need not present additional proof if the plaintiff alleges a willful violation.  *Johnson v. Volkswagen Grp. of Am., Inc.*, No. 23-CV-04491-RFL, 2024 WL 2745905, at *1–2 (N.D. Cal. Feb. 2, 2024).  That is because "[t]he amount in controversy includes all amounts 'at stake' in the litigation at the time of removal, 'whatever the likelihood that [the plaintiff] will actually recover them.'"  *Id.* at *1 (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)).  "Indeed, it would be odd to require [the defendant] to provide proof that it would be subject to the penalty, an issue for which [the plaintiff] would have the burden of proof at trial."  *Id.* at *2.  Because Porter alleged GM willfully violated the Song-Beverly Act, the civil penalty is included in the amount in controversy even without GM submitting additional proof.  *See id.*

The amount in controversy is at least $187,588.95: $62,529.65 in actual damages plus $125,059.30 in civil penalties.  That exceeds $75,000, so the amount-in-controversy requirement for diversity jurisdiction is satisfied.  *See* 28 U.S.C. § 1332(a).  Accordingly, it is unnecessary to consider whether attorney's fees should be considered in the amount in controversy.

GM's removal of Porter's complaint was timely.  And GM has sufficiently established diversity jurisdiction.  Porter's motion to remand is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated: January 5, 2026

RITA F. LIN
United States District Judge